IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TYWUAN MATHENY, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>C.O. SELLARS, et al., )<br>    Defendants. ) | Case No. 7:21-cv-00506<br><br>By: Hon. Michael F. Urbanski<br>Chief United States District Judge |

**MEMORANDUM OPINION**

Tywuan Matheny, a federal inmate proceeding pro se, filed this civil action seeking compensatory and punitive damages pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Matheny claims that Bureau of Prisons ("BOP") officials at USP Lee used excessive force against him in violation of the Eighth Amendment. He also claims that prison officials violated his Fourth Amendment right to bodily privacy. The case is presently before the court on a motion to dismiss filed by nineteen defendants (collectively, the "BOP defendants"). For the reasons set forth below, the court concludes that Matheny's constitutional claims are not cognizable under Bivens. Accordingly, the court will grant the motion to dismiss, ECF No. 62, and dismiss the claims against the remaining defendants under 28 U.S.C. § 1915A(b)(1).

**I.  Background**

Matheny's claims are based on events that allegedly occurred at USP Lee in October 2019. The following factual summary is taken from his amended complaint.

Matheny alleges that members of a force team entered his cell on October 4, 2019, and slammed him to the ground without provocation. Am. Compl., ECF No. 53, at 6. Members

of the force team then struck him in the head and stomped on his lower back and buttocks. Id. The force team included Officers Cook, Choate, Hall, Price, J. Roberts, A. Roberts, Robbins, Carroll, Miller, and Edwards, all of whom participated in the use of force. Id. Matheny alleges that Lieutenant Earley was present during the use of force and failed to intervene. Id.

Lieutenant Earley subsequently placed Matheny in restraints. Id. Matheny alleges that the restraints were excessively tight, causing pain and bruising to his wrists, ankles, and lower back. Id. He claims that other defendants, including Karen Pease and L. Caudill, failed to loosen the restraints. Id. at 7.

Matheny also claims that Lieutenant Earley deprived him of bodily privacy by placing him in alternate clothing that exposed his genitals. Id. at 6. Matheny alleges that his genitals remained exposed during a debriefing with Officer Price. Id. at 7. He alleges that Officer Sellars and Lieutenant Parsons failed to intervene to prevent the deprivation of bodily privacy. Id. at 7.

Matheny claims that officers subjected him to further assaults during the same time period. He alleges that Officer Price punched him and that Officers White, Smallwood, Lawson, and Ledford injured him with a shield. Id. at 7–8. He alleges that John Doe officers participated in the use of force and that Lieutenant Lively and an unknown lieutenant failed to intervene. Id.

## II. Standard of Review

The BOP defendants have moved to dismiss Matheny's amended complaint under

Federal Rule of Civil Procedure 12(b)(6).[1] Pursuant to this Rule, a party may seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Similarly, under the Prison Litigation Reform Act, the court may sua sponte dismiss a prisoner's complaint against a governmental officer or employee "if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.  Discussion

The BOP defendants seek dismissal on the basis that Matheny's constitutional claims are not cognizable under Bivens. For the following reasons, the court agrees.

Although 42 U.S.C. § 1983 authorizes plaintiffs to bring actions for money damages against state officials for alleged violations of the plaintiffs' constitutional rights, "there is no statutory counterpart under which plaintiffs can sue federal officials for constitutional violations." Bulger v. Hurwitz, 62 F.4th 127, 135 (4th Cir. 2023). In Bivens, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Iqbal, 556 U.S. at 675 (internal quotation marks and citation omitted). The Court held "that a person claiming to be the victim

---

[1] The BOP defendants include all of the identified defendants with the exception of Lieutenant Earley, who is no longer employed by the BOP and is not currently represented by the Department of Justice.

of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." Hernandez v. Mesa, 140 S. Ct. 735, 741 (2020). While the Court "acknowledged that the Fourth Amendment does not provide for money damages 'in so many words,'" the Court "held that it could authorize a remedy under general principles of federal jurisdiction." Ziglar v. Abbasi, 582 U.S. 120, 131 (2017) (quoting Bivens, 403 U.S. at 396).

In the decade following Bivens, the Supreme Court recognized two additional contexts in which an individual could pursue a claim for damages against federal officials for constitution violations. In Davis v. Passman, 442 U.S. 228 (1979), the Court held that the Due Process Clause of the Fifth Amendment provided a damages remedy for an administrative assistant who alleged that a Congressman fired her because she was a woman. Davis, 442 U.S. at 248–49. And in Carlson v. Green, 446 U.S. 14 (1980), the Court held that the Eighth Amendment provided a damages remedy for the estate of a prisoner who died due to the alleged failure of federal prison officials to treat the prisoner's asthma. Carlson, 446 U.S. at 24–25. "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 582 U.S. at 131.

In the more than four decades since Carlson, the Supreme Court has repeatedly "declined . . . to imply a similar cause of action for other alleged constitutional violations." Egbert v. Boule, 142 S. Ct. 1793, 1799–1800 (2022) (collecting cases). Over the past six years, the Court "has handed down a trilogy of opinions not only expressing regret over its Bivens cases but also demonstrating hostility to any expansion of them." Tate v. Harmon, 54 F.4th

4

839, 843 (4th Cir. 2022). The Court's recent decisions explain that it "has come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power.'" Egbert, 142 S. Ct. at 1802 (quoting Hernandez, 140 S. Ct. at 741). The Court has observed that "creating a cause of action is a legislative endeavor" and that "the Judiciary's authority to do so at all is, at best, uncertain." Egbert, 142 S. Ct. at 1802–03. "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 582 U.S. at 135 (quoting Iqbal, 556 U.S. at 675). And it has "severely limit[ed] the reach of Bivens by imposing a highly restrictive two-step analysis for Bivens cases." Bulger, 62 F.4th at 137.

In determining whether a Bivens remedy is available in a particular case, a court must first ask "whether the case presents a new Bivens context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." Egbert, 142 S. Ct. at 1803 (internal quotation marks, citation, and brackets omitted). "If the context is not new . . . then a Bivens remedy continues to be available." Tun-Cos v. Perrotte, 992 F.3d 514, 522–23 (4th Cir. 2019).

"If a court finds that a claim presents a 'new context' different from the three Bivens cases, it must 'proceed to the second step and ask whether there are any special factors that counsel hesitation about granting an extension' of Bivens." Bulger, 62 F.4th at 137 (quoting Hernandez, 140 S. Ct. at 743). This inquiry "must focus on 'separation-of-powers principles' and requires courts to ask whether judicial intrusion into a given field is appropriate." Id. (quoting Hernandez, 140 S. Ct. at 743). "If 'there is any reason to think that Congress might

5

be better equipped to create a damages remedy,' then the court must decline to extend Bivens to a new context." Mays v. Smith, ___ F.4th ___, 2023 WL 3829596, at *3 (4th Cir. June 6, 2023) (quoting Egbert, 142 S. Ct. at 1803).

Against this backdrop, the court turns to Matheny's claims of excessive force in violation of the Eighth Amendment and his claims for violations of his right to bodily privacy under the Fourth Amendment.

### A. New Context

The court first considers whether Matheny's claims present a new Bivens context. "The Supreme Court has instructed not only that 'new context' must be understood broadly but also that a new context may arise if even one distinguishing fact has a potential to implicate separation-of-powers considerations." Tate, 54 F.4th at 846 (citing Egbert, 142 S. Ct. at 1805). For instance, "[a] case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 582 U.S. at 139–40. "The Court has made clear that . . . a radical difference is not required." Tun-Cos, 922 F.3d at 523.

Applying these principles, the court concludes that Matheny's Eighth Amendment claims related to the use of force arise in a new context. Although Carlson also involved a claim under the same amendment, the Supreme Court has explained that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in

6

which a damages remedy was previously recognized." Hernandez, 140 S. Ct. at 743. Therefore, "courts should not interpret Carlson to apply outside the precise context at issue in that case." Bulger, 62 F.4th at 138. As previously noted, Carlson involved the alleged failure to provide medical treatment for an inmate's chronic asthma, which ultimately resulted in the inmate's death. Carlson, 446 U.S. at 16 n.1. Here, in contrast, Matheny alleges that various defendants subjected him to cruel and unusual punishment in the form of beatings and painful restraints and that other defendants failed to intervene to protect him from excessive force. Matheny's allegations are sufficiently different to constitute a new context. See Bulger, 62 F.4th at 138 (concluding that an inmate's Eighth Amendment failure-to-protect claims against BOP officials "are not authorized by Carlson but instead present a new context"); Silva v. United States, 45 F.4th 1134, 1137 (10th Cir. 2022) (noting that a federal inmate's claim of excessive force "clearly constitutes an expansion of Bivens"); Ball v. Streeval, ___ F. Supp. 3d ___, 2023 WL 1930003, at *4 (W.D. Va. Feb. 9, 2023) (concluding that similar allegations of excessive force presented a new context).

The court likewise concludes that Matheny's Fourth Amendment claims for violations of his right to bodily privacy present a new Bivens context. Although Bivens also involved Fourth Amendment claims, Matheny's case differs in meaningful ways. In Bivens, the plaintiff alleged that federal narcotics agents violated his Fourth Amendment rights by entering his apartment and arresting him for alleged narcotics violations without probable cause, searching the apartment without a warrant, and subjecting him to a visual strip search. Bivens, 403 U.S. at 389–90. Here, Matheny seeks to recover damages for actions that occurred in prison. While convicted prisoners "retain an interest in some degree of bodily privacy and integrity," King

7

v. Rubenstein, 825 F.3d 206, 215 (4th Cir. 2016) (emphasis added), their rights under the Fourth Amendment are more limited than those enjoyed by non-prisoners. See Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020) (en banc) ("We hold that the Fourth Amendment protects a right to bodily privacy for convicted prisoners, albeit in a more significantly limited way, including during visual inspections.") (emphasis added); Parkell v. Danberg, 833 F.3d 313, 325 (3d Cir. 2016) (holding that the Fourth Amendment "grants inmates a limited right of bodily privacy, subject to reasonable intrusions necessitated by the prison setting"). Thus, the context in which Matheny's claims arise is meaningfully different from that in Bivens. Additionally, the claims are asserted against a "a new category of defendants"—prison officials, as opposed to federal narcotics agents. Mays, 2023 WL 3829596, at *3 (internal quotation marks omitted); see also Tun-Cos, 922 F.3d at 525 (citing this factor in determining that a Fourth Amendment claim against Immigration and Customs Enforcement agents was meaningfully different from the Fourth Amendment claims in Bivens). For these reasons, the court concludes that Matheny's Fourth Amendment claims seek to extend Bivens to a new context.

      **B.**    **Special Factors**

Because Matheny's constitutional claims present a new context, the court must determine whether any special factors counsel against extending the Bivens remedy to cover Matheny's claims against prison officials. Ziglar, 582 U.S. at 136; see also Egbert, 142 S. Ct. at 1805 (explaining that a court must consider "whether there is any reason to think that judicial intrusion into a given field might be harmful or inappropriate") (internal quotation marks and citation omitted). The United States Court of Appeals for the Fourth Circuit and this court

8

have recently concluded that several factors counseled against extending Bivens in the prison context. See Mays, 2023 WL 3829596, at *7 (concluding that an inmate's Fifth Amendment claims were not cognizable under Bivens); Bulger, 62 F.4th at 140 (concluding that an Eighth Amendment failure-to-protect claim was not cognizable under Bivens; Tate, 54 F.4th at 848 (concluding that an Eighth Amendment conditions-of-confinement claim was not cognizable under Bivens); Earle v. Shreves, 990 F.3d 774, 781 (4th Cir. 2021) (concluding that an inmate's First Amendment retaliation claim was not cognizable under Bivens); Ball, 2023 WL 1930003, at *4 (concluding that similar claims of excessive force under the Eighth Amendment were not cognizable under Bivens). Consideration of the same factors counsels against extending Bivens to encompass Matheny's claims.

First, as indicated above, Matheny's claims involve "new categories of conduct and a new category of defendants." Bulger, 62 F.4th at 140. "Expanding Bivens to these types of claims would likely have 'systemwide consequences' for the BOP in the form of increased litigation." Mays, 2023 WL 3829596, at *3 (quoting Tate, 54 F.4th at 846). Even if the court cannot fully and accurately predict such "systemwide consequences," the "uncertainty alone is a special factor that forecloses relief" under Bivens. Egbert, 142 S. Ct. at 1804 (internal quotation marks omitted).

Second, alternative remedies exist for federal inmates such as Matheny. See id. ("If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action.'") (quoting Ziglar, 582 U.S. at 137). In particular, the BOP's Administrative Remedy Program ("ARP") allows federal inmates to seek formal review of an issue related to "any aspect" of their

9

confinement. Bulger, 62 F.4th at 140 (quoting 28 C.F.R. § 542.10(a)). Although the ARP does not offer the opportunity for an award of damages, it nonetheless "provides a 'means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring.'" Mays, 2023 WL 3829596, at *5 (quoting Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001)); see also Bulger, 62 F.4th at 141 (rejecting the appellant's challenges to the sufficiency of the ARP and noting that "[t]he potential unavailability of a remedy in a particular circumstance does not warrant supplementing that scheme").[2]

Third, "legislative action suggesting that Congress does not want a damages remedy" counsels hesitation in recognizing a cause of action under Bivens. Ziglar, 582 U.S. at 148. Approximately fifteen years after Carlson was decided, Congress enacted the Prison Litigation Reform Act ("PLRA"), which made comprehensive changes to the manner in which prisoner abuse claims must be brought in federal court. Id. Although "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," the PLRA does not provide a damages remedy against federal prison officials. Id. at 148–49. As the Fourth Circuit recently observed, Congress's silence in this context "counsels

---

[2] The court also notes that the Federal Tort Claims Act ("FTCA") authorizes claims for damages against the United States for certain intentional torts committed by federal officers, including assault and battery. See Millbrook v. United States, 569 U.S. 50, 54–57 (2013). Consequently, courts have recognized that the FTCA provides another alternative process to redress the type of physical harm alleged in this case. See, e.g., Mejia v. Miller, 53 F.4th 501, 506–07 (9th Cir. 2022) (concluding that the existence of alternative remedies, including claims for damages under the FTCA, weighed against recognizing a Bivens cause of action for excessive force against an officer of the Bureau of Land Management); Oliva v. Nivar, 973 F.3d 438, 444 (5th Cir. 2020) (explaining that the possibility of relief under the FTCA counseled against extending Bivens to a claim of excessive force brought against police officers at a Veterans Affairs hospital, even though the FTCA would "not provide the exact same kind of relief Bivens would").

10

strongly against judicial usurpation of the legislative function." Bulger, 62 F.4th at 141 (internal quotation marks and citation omitted).

Finally, Matheny's claims implicate serious questions relating to the manner and extent of prison discipline. Courts have recognized that "the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily does not interfere." Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir. 1980); see also Bistrian v. Levi, 912 F.3d 79, 94 (3d Cir. 2018) ("The Bureau of Prisons, not the judiciary, has the 'expertise, planning, and the commitment of resources' necessary for the difficult task of running a correctional facility.") (quoting Turner v. Safley, 482 U.S. 78, 84 (1987)). Consequently, "allowing a Bivens actions for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts." Earle, 990 F.3d at 780–81.

The Supreme Court has made clear that "[i]f there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Egbert, 142 S. Ct. at 1803 (quoting Hernandez, 140 S. Ct. at 743). In this case, multiple special factors counsel hesitation. Therefore, the court concludes that a Bivens remedy is unavailable for Matheny's constitutional claims.

## IV. Conclusion

For the reasons stated, the BOP defendants' motion to dismiss, ECF No. 62, is **GRANTED**, and the claims against the remaining defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). An appropriate order will be entered.

Entered: June 22, 2023

*[Digitally signed by Michael F. Urbanski, Chief U.S. District Judge. Date: 2023.06.22 16:07:09 -04'00']*

Michael F. Urbanski
Chief United States District Judge

12